**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA FT. LAUDERDALE DIVISION**

ROLANDO F. QUINTANA,

Plaintiff, **CASE NO.: 0:26-cv-61599-DSL**

vs.

WHOLESALE BUILDING PRODUCTS, LLC.

Defendant.
_______________________________________/

# AMENDED COMPLAINT

Plaintiff, Rolando F. Quintana ("Plaintiff"), by and through the undersigned counsel, hereby sues Defendant, Wholesale Building Products LLC ("Defendant"), and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. This is an action for damages and equitable relief arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621–634 ("ADEA").

2. Plaintiff ROLANDO F. QUINTANA is an individual residing in Broward County, Florida.

3. Defendant WHOLESALE BUILDING PRODUCTS, LLC is a Limited Liability Company doing business in Florida, including at its facility in Hollywood, Florida.

4. At all material times, Defendant employed Plaintiff as a commercial truck driver and employed at least twenty employees.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331.

6. Venue is proper in the Southern District of Florida because Defendant conducts business in this District and the unlawful employment practices alleged herein occurred within this District.

7. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations, alleging age discrimination and

retaliation. Plaintiff received a notice of right to sue on March 5, 2026. (See attached as **Exhibit A**).

8. All conditions precedent to this action have occurred, have been performed, or have been waived.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

9. Plaintiff most recently began working for Defendant on or about June 23, 2010, as a commercial truck driver.

10. Plaintiff was fifty-eight (58) years old when Defendant terminated his employment in March 2025.

11. Plaintiff had approximately twenty-five years of commercial-truck-driving experience, including approximately fifteen years of employment with Defendant over separate periods of service.

12. Throughout his employment, Plaintiff maintained a valid Class A Commercial Driver's License and a Transportation Worker Identification Credential ("TWIC") card, both of which were required for his position.

13. Plaintiff was qualified to perform his position and regularly completed the deliveries assigned to him.

14. Before his termination, Plaintiff recalls only receiving only one verbal warning concerning an incident in which he allegedly failed to stop at a stop sign.

15. During the latter portion of Plaintiff's employment, Defendant began hiring substantially younger drivers.

16. As younger drivers entered Defendant's workforce, Plaintiff, who was one of Defendant's oldest and most senior drivers, began experiencing less favorable treatment from his direct supervisor, Ervin Torrez ("Torrez").

17. Torrez assigned drivers' routes, determined their hours, sent drivers home, disciplined drivers, evaluated their performance, and possessed authority to terminate their employment.

18. Towards the end of his employment, Torrez frequently referred to Plaintiff and Mr. Victor (LNU) who was approximately sixty (60) years old, as "Los Viejos" ("the old ones").

19. During meetings attended by Plaintiff and most of Defendant's truck drivers, Torrez stated that the older drivers would need to find work elsewhere because Defendant would not give them raises.

20. Following these comments and as younger drivers joined Defendant's workforce, Torrez began treating Plaintiff less favorably in the terms and conditions of his employment.

21. Plaintiff was not treated equally compared to his younger peers, like Mr. Andres (LNU), who is 26 years old, and Mr. Billy (LNU) who is 33 years old.

22. Plaintiff was consistently assigned a heavier workload; typically, around 9 deliveries per day, while the younger drivers aforementioned were assigned approximately three (3) deliveries per day.

23. On slower days, Plaintiff was also sent home despite work remaining available, while substantially younger drivers were permitted to continue working and receive additional hours.

24. Torrez selectively enforced the truck-loading policy against Plaintiff by prohibiting Plaintiff from loading his truck for the next day after returning after 5:00 p.m., while permitting other, younger drivers to load under similar circumstances.

25. Plaintiff ultimately complained to Defendant's Human Resources Manager, Carolina Tamboles ("Tamboles"), and Defendant's Vice President, Emilie Vinet ("Vinet"), concerning Torrez's treatment of him in December 2024.

26. Plaintiff informed Tamboles and Vinet that he believed Torrez was discriminating against him because Plaintiff was one of the oldest drivers.

27. Plaintiff also complained that he was being sent home despite work remaining available.

28. Upon information and belief, Vinet advised Torrez that Plaintiff wished to meet with Human Resources and management. Consequently, Torrez knew that Plaintiff had complained to Human Resources about his treatment.

29. Following Plaintiff's complaint, the harassment from Mr. Torrez did not cease.

30. On March 13, 2025, approximately three months after Plaintiff complained to management regarding the discrimination, Defendant terminated Plaintiff's employment.

31. Plaintiff's termination occurred during a meeting attended by Vinet, Torrez, dispatcher Enrique Sequeira, and Safety and Fleet Coordinator Victorino Gonzalez.

32. The decision to terminate Plaintiff had already been made before Plaintiff entered the meeting, and Gonzalez communicated the termination to Plaintiff while Torrez and the other management personnel were present.

33. On March 17, 2025, Plaintiff was given a formal termination notice. (See **Exhibit B**, Termination).

34. Prior to his termination, Plaintiff had not been advised that his overall performance or attitude was deficient or that his employment was in jeopardy.

35. Plaintiff was terminated despite being qualified for his position, maintaining the licenses and credentials required by Defendant, successfully performing the deliveries assigned to him, and

having worked for Defendant for approximately twenty-five years over separate periods of employment.

36. Plaintiff's age was a determinative and but-for cause of Defendant's decision to subject Plaintiff to adverse employment actions, including his termination.

**COUNT I**
***Age Discrimination in Violation of the ADEA***

37. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-24 and 30-36 above as if set out in full herein.

38. Plaintiff was at least forty (40) years old at all material times and is within the class of persons protected by the ADEA.

39. Defendant was Plaintiff's employer within the meaning of the ADEA because it employed at least twenty employees during the relevant period.

40. Plaintiff was qualified for his position as a CDL truck driver, maintained the required Class A CDL and TWIC credential, and performed his assigned delivery duties.

41. Plaintiff suffered adverse employment actions, including a significant reduction in work hours, and termination.

42. During the period preceding Plaintiff's termination, his direct supervisor repeatedly referred to Plaintiff and other older drivers as "Los Viejos," stated that older drivers should seek employment elsewhere because Defendant would not give them raises, and repeatedly encouraged Plaintiff to leave Defendant's employment.

43. During this same period, substantially younger drivers received more favorable treatment concerning work assignments and available working hours.

44. Torrez exercised supervisory authority over Plaintiff and participated in the meeting at which Defendant terminated Plaintiff's employment.

45. Defendant terminated Plaintiff after Torrez had engaged in the age-based conduct described above and after Plaintiff complained of discrimination to Human Resources and Vinet.

46. Plaintiff's age was the but-for cause of Defendant's discriminatory treatment and termination of Plaintiff's employment.

47. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.

48. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered loss of wages, loss of benefits, loss of employment opportunities, emotional distress, humiliation, embarrassment, inconvenience, and other damages to the fullest extent permitted by law.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated the ADEA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

e. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

f. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT II
***Retaliation in Violation of the ADEA***

49. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-19 and 25-35 above as if set out in full herein.

50. The ADEA prohibits an employer from discriminating against an employee because the employee opposed practices made unlawful by the ADEA.

51. Plaintiff engaged in protected activity when he complained to Tamboles and Vinet that Torrez was discriminating against him.

52. Plaintiff also engaged in protected activity when he opposed the differential treatment directed at him by Torrez and reported that he was being sent home early while work remained available.

53. Torrez knew that Plaintiff had complained to Human Resources and management regarding his treatment.

54. Following Plaintiff's protected complaints, the unfavorable treatment continued.

55. Approximately three months after Plaintiff complained to Defendant's management regarding discrimination, Defendant terminated his employment.

56. The temporal proximity between Plaintiff's protected activity and termination, together with the continuation of the complained-of treatment, Torrez's knowledge of Plaintiff's complaint, and Torrez's involvement in the termination process, support a reasonable inference that Plaintiff's protected activity was the but-for cause of his termination.

57. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, lost benefits, and other damages recoverable under the ADEA.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in his favor and against Defendant and that the Court award Plaintiff:

a. Back pay and lost employment benefits;

b. Front pay or reinstatement, as appropriate;

c. Liquidated damages to the extent permitted by the ADEA;

d. Prejudgment interest to the extent permitted by law;

e. Reasonable attorneys' fees and costs;

f. Appropriate declaratory and equitable relief; and

g. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: October 8, 2026

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 8, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

Respectfully submitted,
*s/ Maria Lopez*
Maria Lopez, Esq.
Fla. Bar No.: 1010761
GALLARDO LAW OFFICE, P.A.
8492 SW 8th Street
Miami, Florida 33144
Telephone: (305) 261-7000
Email: maria.lopez@gallardolawyers.com
employment@gallardolawyers.com